FLORENCE B. ECKLE, WALTER B. ECKLE, FLORENCE I. BANKS and LIDA M. BUFORD v. LEGRAND RYLAND and COLEMAN G. BUFORD; COLEMAN G. BUFORD, Appellant.

Division One, April 2, 1914.

1. **PRACTICE: Agreed Case: Refusing to Give or Refuse Instructions.** The Supreme Court, on appeal, can affirm or reverse a judgment in a case tried by the judge alone on agreed facts, as well without as with instructions. If the judgment was right, then for appellate purposes, the theory of the trial judge was right, or, if not right, the reasons for his decision are immaterial. Hence, it is not material error that he neither gave nor refused instructions asked by appellant. A refusal of instructions interpreting a deed or will, or a refusal to pass upon them at all, cannot materially affect the merits in an agreed case.

2. **CONTINGENT REMAINDER: Validity of Devise Thereof.** The deed "granted, bargained and sold" to a trustee certain lands and empowered him to collect the rents and out of the same to pay the taxes and expenses of improvements and repairs and use the balance for the support of grantor's son William "for and during the term of his natural life." At the death of said son if the grantor was then living the trustee was to turn over the net income of the land to her. The deed then recited: "On my death, should I survive the said William M. Buford, and, on his death, should he survive me, the said trust herein provided for shall terminate, and the title to the said real estate and property shall go and vest in my two other children, Legrand G. Buford and Florence I. Banks, one-third each, or to their heirs should they or either of them be dead, and the remaining one-third shall vest in my two grandchildren, Legrand Ryland and Buford Ryland, as joint tenants, or to their survivor, for life, with the remainder to my two children, Legrand G. Buford and Florence I. Banks, and their heirs,

share and share alike, in fee simple forever." *Held,* that Legrand G. Buford did not take a vested remainder in the land, nor did he take a vested interest defeasible on condition subsequent, namely, his death prior to the termination of the trust, but he took a contingent remainder, the contingency being that he survived his brother William, alienable subject to the chance of nothing passing on the contingency not happening, and as it did happen, that is, as William survived him, his will devising the property to his wife passed nothing to her, but the estate descended as if he had left no will, that is, the title vested in his children.

3. **DEED: Rules of Construction.** In the construction of a deed the intention of the grantor is the main thing, and all other rules are mere aids; and in discovering and uncovering the intention of a grantor or testator, if that intention be at all obscure, the guiding rules are: (1) the whole instrument must be considered; (2) the objects to be subserved and the circumstances surrounding the grantor or testator are to be kept in view; (3) his words are to be taken and understood in the sense indicated by the instrument; (4) effect must be given to all its words and clauses if that be possible in reason, so that each is made operative and effective to some purpose; (5) the best mode of interpretation is to reconcile one clause with another, where that can be done without straining the words by hairspun theories or overnice refinements; and (6) in wills, more than in deeds, and yet in the latter, the language varies so materially and so much that precedents are rarely controlling in a concrete case except as they may furnish general aiding rules. For those reasons the best interpretation of a deed or will is the instrument itself.

4. **CONTINGENT REMAINDER: "And Heirs": "Or Heirs."** The deed vested the title in the trustee during the life of the grantor and her son, and said the trust shall then "terminate" and the title "shall vest in my two other children, Legrand G. Buford and Florence I. Banks, one-third each, *or* to their heirs should they or either of them be dead, and the remaining one-third shall vest in my two grandchildren, Legrand Ryland and Buford Ryland, as joint tenants and to their survivor, for life, with the remainder to my two other children, Legrand G. Buford and Florence I. Banks, *and* their heirs and assigns." *Held,* that some significance must be given to the change from "or heirs" used in one place to "and heirs" used in the other. The word "heirs" may be a word of limitation and ordinarily one coming within that designation takes by descent or inheritance; but its context may show that it is used as a word of purchase and means children or grandchildren. The clause vesting the title in the two children named "or to their heirs

should they or either of them be dead," when read with the other clause, means that neither child named was vested with the title unless he or she was living at the termination of the equitable life estate. The deed indicated that the title was to vest in one of two ways—in the two children named if living, in their children if dead—and, one of them having died before the equitable life estate terminated, the remainder was contingent, and the title never vested in him.

5. ————: Old Learning: Trend of Decisions. The tendency of modern decisions on questions of contingent and vested remainders has been to break away from the technical refinements of the old common law learning, and give effect to the intent of a deed as gathered from its face and the everyday, good sense of its language.

6. ————: No Vesting of Title During Life Estate. It is of no consequence where the estate in remainder was during the equitable life estate. Title does not have to vest at the execution of the deed. A deed may create a freehold estate *in futuro*.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis*, Judge.

REVERSED AND REMANDED (*with directions*).

*Aull & Aull* for appellant.

(1) In the interpretation of contracts, whether it be deed or other written instrument, the proper construction of the instrument must be sought from the entire deed, and not merely from any particular part of it. Dickerson v. Dickerson, 211 Mo. 496; Buxton v. Kroeger, 219 Mo. 245; Williamson v. Brown, 195 Mo. 336; Gibson v. Bogy, 28 Mo. 478; Orr v. Rode, 101 Mo. 396; McCullock v. Holmes, 111 Mo. 447; Meyer v. Christopher, 176 Mo. 594; Utter v. Sidman, 170 Mo. 284; Turner v. Timberlake, 53 Mo. 371; Allison v. Chaney, 63 Mo. 279; Walton v. Drumtra, 152 Mo. 489; Armor v. Frey, 226 Mo. 646. Rules of interpretation, formerly adhered to with much strictness, have been changed, modified and abandoned, when, in their modern application, they have been found hostile to the

end the courts struggle to attain, which is, to give effect to the grantor's intention, and, to effect that intention being the paramount rule they read the whole instrument, and, if possible, give effect and meaning to all its language. Bean v. Kenmuir, 86 Mo. 671; Russell v. Eubanks, 84 Mo. 86; Feller v. Lee, 225 Mo. 332; Utter v. Sidman, 170 Mo. 284. (2) The remainder, under the provisions of the deed, is a contingent remainder, or, under some of the decisions, a vested remainder defeasible on condition subsequent. Death of Legrand G. Buford before the termination of the trust, or, happening of the contingency, defeated the same, if construed to be so vested. Dickerson v. Dickerson, 211 Mo. 497; Emerson v. Whittlesey, 55 Mo. 258; Maguire v. Moore, 108 Mo. 274; DeLassus v. Gatewood, 71 Mo. 381; Jones v. Waters, 17 Mo. 589; Aubuchon v. Bender, 44 Mo. 560; Rodney v. Landau, 104 Mo. 251; Emmerson v. Hughes, 110 Mo. 630; 2 Washburn, Real Prop. (6 Ed.), secs. 1555-1580; Manice v. Manice, 43 N. Y. 380; Edwards v. Hammond, 3 Lev. 132; Doe v. Moore, 14 East, 601; Blanchard v. Blanchard, 1 Allen (Mass.), 223. (3) As the title was not to vest in Florence L. Banks and Legrand G. Buford until the death of William M. Buford and grantor, Eusebia N. Buford, and then only in such of them as were alive at that time, the remainder was necessarily contingent. Dickerson v. Dickerson, 211 Mo. 483; Buxton v. Kroeger, 219 Mo. 231; Tiedeman on Real Prop. (2 Ed.), secs. 396-397-403; Emison v. Whittlesey, 55 Mo. 254; DeLassus v. Gatewood, 71 Mo. 381; Rodney v. Landau, 104 Mo. 257; Emerson v. Hughes, 110 Mo. 630; Maguire v. Moore, 108 Mo. 267; Owen v. Eaton, 56 Mo. App. 563; Taylor v. Adams, 93 Mo. App. 277; Aubuchon v. Bender, 44 Mo. 560; Olney v. Hull, 21 Pick. (Mass.) 311; Thomson v. Ludington, 104 Mass. 193; Denny v. Kettel, 135 Mass. 138; Colby v. Duncan, 139 Mass. 398; Hunt v. Hall, 37 Me. 363; Buck v. Paine, 75 Me. 582; Tillman v. Davis, 95 N. Y. 24; Whitesides

v. Cooper, 115 N. C. 570; White's Tr. v. White, 86 Ky. 602.; Starr v. Willoughby, 218 Ill. 485; Schaeffer v. Schaeffer, 54 W. Va. 681; 1 Preston on Estate, pp. 36-74; 2 Washburn on Real Prop. (6 Ed.), secs. 1526-1575; Sullivan v. Garesche 229 Mo. 506; Rinquist v. Young, 112 Mo. 25; Wombles v. Young, 69 Mo. 117. Where the remainder is limited to a person not ascertained by the terms of the instrument, the remainder is contingent. Buxton v. Kroeger, 219 Mo. 224. A contingent remainder is one whose vesting, or taking effect in interest, is, by the terms of its creation, made to depend upon some contingency which may never happen at all, or may not happen within a requisite time, by reason whereof its capacity of vesting, or taking effect in interest, may be forever defeated. 2 Washburn on Real Property (6 Ed.), sec. 1555; Dickerson v. Dickerson, 211 Mo. 488-9; 2 Black. Comm. 169; 2 Minor, Institutes, p. 337; Fearne's Remainders, 116-17. (4) Under many authorities, because the courts favor vested remainders, such a remainder is determined to be vested, subject to be defeated or divested on condition subsequent—the death of Legrand G. Buford before the termination of the trust. If so determined to be vested, it was defeated, or divested, by the death of Legrand G. Buford prior to the termination of the trust. Manice v. Manice, 43 N. Y. 380; 2 Washburn, Real Prop. (6th Ed.), p. 517, sec. 1544; Buck v. Paine, 75 Me. 583; 4 Kent, Com. (13 Ed.), secs. 203, 204; Blanchard v. Blanchard, 1 Allen (Mass.), 223; Price v. Hall, L. R. 5 Eq. 399; Doe v. Cunningham, 6 Wall. 458; Harvey v. McLaughlin, 1 Price, 264; Roome v. Phillips, 24 N. Y. 463; Paterson v. Ellis, 11 Wend. 259; Everett v. Everett, 29 N. Y. 76; 2 Redfield, Wills, 592-641; 1 Jarman, Wills, 767; Gilman v. Reddington, 24 N. Y. 16; Inches v. Hill, 106 Mass. 575; Roper on Legacies, 571; Linton v. Laycock, 33 Ohio St. 128; Doe v. Moore, 14 Eas. 604; 1 Tiffany, Real Prop., sec. 120; Kane v. Gott, 24 Wend. 641; Collins v. Collins, 40

Ohio St. 353; Tillman v. Davis, 95 N. Y. 17; Harbert
v. Cauthorn, 100 Va. 651; Rood v. Hovey, 50 Mich.
395; Elwood v. Plummer, 78 N. C. 392; Clanton v.
Estes, 77 Ga. 352; Bigley v. Watson, 98 Tenn. 353. (5)
There may be two concurrent fees, by way of remain-
der; one as a substitute for the other and to take effect
in case the prior one fails to vest in interest. Alter-
native remainders, remainders on a contingency with
a double aspect, or remainders on a double contin-
gency. 1 Fearne, Remainders, pp. 373-4; City of
Peoria, 101 Ill. 616; Dunwoodie v. Reed, 3 Serg. & R.
452; Loddington v. Kime, 1 Ld. Raym. 203; Good-
night v. Dunham, Dougl. 265; Doe v. Burnsall, 6 T. R.
30; Hennessey v. Patterson, 85 N. Y. 91; Doe v. Fon-
nereau, 2 Dougl. 505; Cooper v. Hepburn, 15 Gratt.
(Va.) 558-9; Walker v. Lewis, 90 Va. 582; Allison v.
Allison, 101 Va. 556, 63 L. R. A. 920; 2 Minor on Real
Prop., sec. 737; 16 Cyc. 650; 2 Washburn, Real Prop.
(6 Ed.), sec. 1575. (6) There was clearly no intention
to vest any title to the real estate in the children at
the date of the execution of the deed. The well settled
purpose, of which the grantor was extremely watchful,
was to keep the property in the family for her children,
or, if they be not living at the termination of the trust,
in the grandchildren, and heirs, and to withhold title
and control until the termination of the trust. Buxton
v. Kroeger, 219 Mo. 245; Bean v. Kenmuir, 86 Mo. 670;
Armor v. Frey, 226 Mo. 646. (7) The heirs, Coleman
G. Buford and Florence B. Eckle, take as purchasers,
under the deed of Eusebia N. Buford, who gave to them
the estate in remainder, by way of substitution for,
and not by descent through, the deceased father, L. G.
Buford. Dickerson v. Dickerson, 211 Mo. 496; Woer-
ner, Am. Law of Adm., p. 902; Williams on Executors
(Perkins Ed.), p. 1193; Clark v. Cordis, 86 Mass. 480;
Cushman v. Horton, 59 N. Y. 149; Tillman v. Davis,
95 N. Y. 24. (8) The words "heirs" will be construed
as child, or children, when necessary to carry out the

clear intention of the grantor, whether the instrument be deed or will. Roberts v. Crume, 173 Mo. 579; Haverstick's Appeal, 103 Pa. St. 394; Waddell v. Waddell, 99 Mo. 345; 4 Kent, Com. (13 Ed.), 419; 3 Washburn, Real Prop. (6 Ed.), sec. 1565; Warn v. Brown, 102 Pa. St. 347. A devisee is not an heir, and under the provisions of the deed the widow and husband of Florence B. Eckle were not heirs but devisees.

*Chiles & Chiles* for respondent Lida M. Buford.

(1) We agree with appellant that in the construction of this deed of trust every part must be considered and the meaning must be ascertained from the entire deed from its four corners, as this court has often said. In analyzing the deed it is to be noted that all parties taking a beneficial interest in the property are doubly identified, that is, by name as well as description; the life tenants, William M. Buford, son, and Legrand Ryland and Buford Ryland, grandchildren, and the remaindermen, "my other children," Legrand G. Buford and Florence I. Banks. In those parts where the names are not repeated, apt reference is made by the use of the terms "said children and grandchildren" and "said other parties." Rines v. Mansfield, 96 Mo. 399. (a) The consideration for making the deed, outside of the ample provision for the support of the insane son, William M. Buford, is stated to be "the love I bear for my children and grandchildren hereinafter named." Those so named are her children, William M. Buford, Legrand G. Buford and Florence I. Banks, and her grandchildren, Legrand Ryland and Buford Ryland. The other four grandchildren, including appellant, were not named. No other grandchild was contemplated by Mrs. Buford and even the two grandchildren named were cut off with a mere life estate in the share represented by their mother; much less were unnamed grandchildren provided for. (b) Eu-

sebia N. Buford in this deed did "grant, bargain and sell" to the trustee, E. M. Edwards, the land, to take and receive its rents and profits and pay out same as stated, during the life of William M. Buford and Eusebia N. Buford, should she survive him, without any power of alienation, and on his death the trust shall terminate "and the title to said real estate and property shall go to and vest in my two other children, Legrand G. Buford and Florence I. Banks, one third each, or to their heirs should they or either of them be dead," (still without providing for her other grandchildren as appellant claims she did) and "the remaining one third shall vest in my two grandchildren, Legrand Ryland and Buford Ryland as joint tenants and to their survivor for life, with the remainder to my two other children, Legrand G. Buford and Florence I. Banks and their heirs, share and share alike in fee simple forever." This creates a vested remainder in Legrand G. Buford and Florence I. Banks beyond controversy. It will be noted in this clause in disposing of the remainder, that the words "children" and "grandchildren" are used, so that there is no authority to substitute the word "children" in lieu of "heirs" where that word is used, the maker of the deed having thus drawn a distinction between the terms. The word "heirs" as used is indicative of descent and, with the rest of the deed, thereby clearly negatives the idea of purchasers and is not descriptive of purchasers or used to introduce a new line of beneficiaries. (c) The habendum clause is first to the trustee for the purposes of the trust during the lives of Eusebia N. Buford and William M. Buford and then to "my said children and grandchildren as heretofore provided for," and to "those who take the shares and remainder"—the remainderman—that is Legrand G. Buford and Florence I. Banks—"in fee and their heirs and assigns forever." This indicates beyond dispute a vested remainder. (d) The covenants are with the

trustee and "said other parties"—that is Legrand G. Buford and Florence I. Banks—"and their heirs and assigns to forever warrant and defend," etc., also denoting a vested remainder in the two children named. Of course this would extend to the Ryland grandchildren, who are named, as to their life estate in one third. (2) This court has asserted that in such cases as this precedents are of little value except as they may be like the case in hand and except as they may formulate rules to be applied. The language to be construed which is nearest to that in this case is used in a will in Chew v. Keller, 100 Mo. 362. There is nothing in the deed of trust in the case at bar to indicate that the grantor was providing for any of her six grandchildren except the Rylands, and they only took a life estate in what would have been their mother's share, Legrand G. Buford and Florence I. Banks getting the "remainder in fee simple forever." Rines v. Mansfield, 96 Mo. 399. Another case, involving language in the construction of a deed, similar to that used in this case, is the case of Waddell v. Waddell, 99 Mo. 338. The rule of construction of the word "heirs" used in these cases is cited with approval in the case of Roberts v. Crume, 173 Mo. 579. For the characteristics of vested remainders and contingent remainders, see Tindall v. Tindall, 167 Mo. 226. (3) "The word 'heirs' will be considered as a word of limitation and not of purchase unless the will shows clearly that it is used to introduce a new class of beneficiaries." Chew v. Keller, 100 Mo. 369; Roberts v. Cramer, 173 Mo. 579. (4) "The law favors vested remainders and where there is a reasonable doubt as to whether the estate created is a vested or a contingent remainder, the courts will resolve that doubt in favor of the former and against the latter." Collier's Will, 40 Mo. 321; Chew v. Keller, 100 Mo. 361; Byrne v. France, 131 Mo. 646; Dickerson v. Dickerson, 211 Mo. 488; Tindall v. Tindall, 167 Mo. 225.

LAMM, J.—Partition.   In the Lafayette Circuit
Court.   On May 27, 1891, Eusebia N. Buford, widow
and owner, executed to one Edwards, as trustee, a deed
to lands in said county and duly spread it of record.
Edwards took possession and he and a successor in
trust executed the trust.   As the main question hinges
on whether her son, Legrand G., took a vested remain-
der under that deed that he could devise in case he
died prior to the death of the two life beneficiaries,
William M. and Eusebia N.. we reproduce the deed to·
speak for itself, thus:

> Know All Men by These Presents:   That for the purpose
> of providing for the maintenance and support of my son,
> William M. Buford, being of impaired mind, for life, and for the
> love I bear for my children and grandchildren hereinafter
> named, and other good considerations thereto moving, and also
> for and in consideration of the sum of one dollar to me in hand
> paid, the receipt of which I do hereby acknowledge, I, Eusebia
> N. Buford, widow, of the county of Lafayette and State of Mis-
> souri, have this day granted, bargained and sold and do hereby
> grant, bargain and sell unto Elisha M. Edwards of said county
> of Lafayette and State of Missouri as trustee for the purposes
> hereinafter mentioned, the following described real estate and
> property, formerly belonging to my said son, William M.
> Buford, being situate and lying in said county of Lafayette
> in the State of Missouri, to-wit: the west half of the north-
> west quarter of section numbered one and east half of the
> northeast quarter of section numbered two both in township
> numbered fifty and range numbered twenty-five; also the north-
> west quarter of the southwest quarter of section numbered
> twenty-four in township numbered fifty-one and range num-
> bered twenty-five.
>
> The said Elisha M. Edwards, as trustee, to take and
> receive the rents, issues and profits of said lands and prem-
> ises, and, out of the same, to pay first, the taxes that may
> be assessed thereon, the necessary and proper cost and expense
> of keeping the said premises and the buildings, fences and
> other improvements thereon in good and proper repair, the
> costs of keeping the buildings on said property properly in-
> sured against loss by fire, storm and other casualty, and the
> necessary costs and expenses of the trusteeship herein pro-
> vided for, and the balance shall be, by the said trustee, kept,
> appropriated and used, for the proper and comfortable support,
> maintenance, care, clothing and keeping of my beloved son,

William M. Buford, the payment of his medical bills and his custody, if necessary, in an asylum for the insane, and for all other proper and necessary expenditure to keep my said son in comfort, for and during the term of his natural life. At the death of my son, if I, the said Eusebia N. Buford, be then living, then the said trustee shall use and appropriate the net rents, issues and profits of said land, for my use, and shall pay over the same to me, for my individual use, on my death, should I survive the said William M. Buford, and, on his death, should he survive me, the said trust herein provided for shall terminate, and the title to the said real estate and property shall go to, and vest in my two other children, Legrand G. Buford and Florence I. Banks, one-third each, or to their heirs, should they or either of them, be dead, and the remaining one-third shall vest in my two grandchildren, Legrand Ryland and Buford Ryland, as joint tenants, and to their survivor, for life, with the remainder, to my two children, Legrand G. Buford and Florence I. Banks, and their heirs, share and share alike, in fee simple forever. Any funds on hand, with said trustee, on the termination of this trust, is to be paid over, and disposed of, in the same way as is provided for the disposition of the land, except that the share of the said Ryland grandchildren therein shall be paid to them absolutely.

To have and to hold the said real estate hereby conveyed, and all the rights, privileges and appurtenances thereto belonging, unto the said Elisha M. Edwards, as trustee, as aforesaid, for the purposes of this trust for and during the natural life of me, the said Eusebia N. Buford, and the natural life of the said William M. Buford, as hereinbefore provided, and to my said children and grandchildren, as hereinbefore provided, and to those who take the shares and remainder in fee, and their heirs and assigns forever. The said Eusebia N. Buford, hereby covenanting to and with said trustee, and said other parties, and their heirs and assigns, for myself, my heirs, executors and administrators, to forever warrant and defend the title thereto against the lawful claims and demands of all persons whomsoever, except as against the taxes thereon for the year 1891, which said trustee is to pay out of said rents and profits.

In testimony of all which I hereto subscribe my name and affix my seal this 27th day of May A. D. 1891.

While William M. Buford was yet alive, Legrand G. Buford died, to-wit, in October, 1909, leaving two children by his first wife, dead, and a widow, the plaintiff Lida M. Buford, and a will. The two children are the plaintiff Florence D. Eckle and the defendant Cole-

man G. Buford. As the two Eckles, husband and wife, and the widow Lida M. claim under the due probate of the will of Legrand G. Buford, to the exclusion of the son, Coleman G., we let the will also speak for itself, thus:

I, L. G. Buford, of Eldorado Springs, in the county of Cedar and State of Missouri, being of sound mind and memory, and considering the uncertainty of this frail and stansitory life do therefore make, ordain, publish and declare this to be my last will and testament:

First. I order and direct that my executrix hereinafter named pay all my just debts and funeral expenses as soon after my decease as conveniently may be.

Second. After the payment of such funeral expenses and debts, I give, devise and bequeath to my beloved wife, Lida Buford, all my personal property (not herein excepted) and also one-half of my one-third interest in two hundred acres of land situate in Lafayette County, Missouri.

3rd. I will and bequeath to my daughter, Florence, and her husband, W. R. Eckle, the other one-half of my interest in two hundred acres of land situate in Lafayette County, Missouri.

4th. To Coleman Eckle, my grandson, I will my watch.

5th. To my son, Coleman G. Buford, I will one dollar.

6th. In case of the death of my wife, Lida Buford, before the sale of said real estate as above stipulated then I will that my daughter, Florence, and her husband, W. R. Eckle, shall have the whole of said interest in said real estate.

Lastly I make, constitute and appoint Lida Buford, my wife, without bond to be executrix of this my last will and testament, hereby revoking all former wills by me made.

In witness whereof I have hereunto subscribed my name and affixed my seal the 21st day of October in the year of Our Lord one thousand nine hundred and nine.

On March 16, 1910, plaintiffs brought suit to partition the land described in the foregoing deed of trust, making Legrand Ryland sole defendant. Afterwards said son of Legrand G. Buford, to-wit, Coleman G., came in as a party defendant. He filed answer claiming to be a cotenant with plaintiffs and his codefendant, Ryland. Plaintiffs joined issue thereon. The answer of defendant Ryland is unimportant as he rests

satisfied. As the controversy primarily ranges around the construction of the foregoing deed, and secondarily around the construction of the foregoing will, and since the claims of the respective parties will presently appear, the pleadings setting them forth are unimportant.

Presently such proceedings were had that an interlocutory judgment in partition was entered adjudging that Coleman G. took no interest under said deed of his grandmother or under the will of his father. He excepted to that judgment and preserved the evidence upon which it was rendered and his exceptions in a term bill. Afterwards a partition sale was made, followed by an order of distribution in accordance with the interlocutory judgment excluding him. Thereupon, at the heels of the final judgment approving that order of sale and distribution, he without success filed a motion for a new trial and again excepted and in apt time filed his principal bill and in due form appeals.

The facts are stipulated and have been already outlined. They consist, first, of said deed and will; second, of facts which for perspicuity's sake we set forth over again a little more in detail and compactly, thus: Eusebia N. Buford, the ancestor and common source of title, died in 1895. Four children were born to her, to-wit, Legrand G. Buford, Florence I. Banks (a married daughter, a plaintiff), William M. Buford (who died single) and a daughter who intermarried with Mr. Ryland and died leaving two children by him, Legrand (a defendant) and Buford (who died prior to suit). The son of Eusebia, William M., was *non compos* and died after his brother Legrand G., who, twice married, died in 1909 testate in Cedar county, leaving two children by his first wife, a daughter, Florence B., aged thirty-nine years, intermarried with one Eckle (both plaintiffs), a son, Coleman G., aged forty-one years (who was, as said, made a defendant on his

own motion), the above will duly probated, and a widow (the plaintiff Lida M.). William M. Buford died on the third day of March, 1910. Eusebia's grandchild, Buford Ryland, died on a date not given, but, as said, before suit.

If Legrand G. Buford, dying as he did before the beneficiary last surviving, William M., did not take a vested remainder under his mother's deed, or (put differently) did not take a vested interest defeasible on condition subsequent, to-wit, his death prior to the termination of the trust, then his will was not effective as a devise of the land, and, hence, his widow took no interest therein under that will and appellant takes as a purchaser under his grandmother's deed and not by inheritance from his father; hence the judgment is wrong. Appellant stands for that hypothesis and construes the deed accordingly.

Furthermore, assuming (for the purposes of the argument alone) that Legrand G. Buford took a vested estate under his mother's deed and not a mere contingent one, as appellant contends on the hypothesis just put, then, for that turn, the position of appellant is that Legrand G. did not include in his will the particular one-third interest made subject to the Ryland life estate and, hence, as to that third, it is a case of intestacy and the judgment is wrong in that aspect.

The interest of Florence I. Banks is not in dispute. The life interest of Legrand Ryland in one-third was commuted into cash and is not in dispute. If appellant be right in his principal contention then his sister, Mrs. Eckles, takes by purchase under the grandmother's deed the same as he. Accordingly, will or no will, appellant says he has no substantial controversy with her. This narrows the controversy to one between him and his stepmother, Lida M. Buford, and she alone files a brief as respondent, stating therein the questions to be:

"First. Did Legrand G. Buford take a vested interest in the two hundred acres of land which he could dispose of by will?

"Second. Did Lida M. Buford take one-half of that interest under the will of her husband, Legrand G. Buford?"

We may be in error, but we infer all parties took down their shares except that a receiver was appointed below and took charge of the stepmother's share in the proceeds of the sale pending appeal, its disposition to abide the event.

Any other record facts pertinent to propositions ruled, will appear in due course.

I. *Of error in refusing to consider or give instructions.*

Appellant asked instructions declarative of the law on his construction of the deed and will as put in the two foregoing hypotheses. The court neither gave nor refused them, but ignored them. Appellant complains of that from two angles, to-wit: First, in refusing to pass on them at all; second, in refusing to give them.

There was no conflict in the evidence. In fact the case, one at law, is an agreed one. The trial was to the court. Under such circumstances the agreed facts are equivalent to a special verdict and the only function of instructions would be to indicate whether the trial court had the right theory of the law on the agreed facts. Now, if his judgment was right, then, for appellate purposes, his theory of the law was either bound to be right, or, if not right, then the *ratio decidendi* matters not a whit; for, as we have here the agreed facts as well as the judgment, we can as well affirm or reverse that judgment without instructions as with them. In such case we can "administer the true law." [Cox v. Sloan, 158 Mo. l. c. 429.] To be reversible error, the error must materially affect the merits, and it is plain enough that a refusal of instruc-

tions interpreting the deed and will, or the refusal to pass upon them one way or the other, could not materially affect the merits on an agreed case. The situation is not new. It has been here and dealt with before and the propositions just laid down are sustained by Baumhoff v. Railroad, 171 Mo. 1. c. 125; State ex rel. v. Cummings, 151 Mo. 1. c. 57; and Kronenberger v. Hoffner, 44 Mo. 1. c. 191 et seq. "Where the facts are undisputed," says Bliss, J., in that case, "the decision of the court, if wrong, is error of law, whatever may be the formal declarations of law, or whether there be any." And from the same judge we have in Aubuchon v. Bender, 44 Mo. 1. c. 570, this: "No agreed statement of facts can fix a conclusion of law."

If the case had not been an agreed case, or if the evidence had been conflicting, a different rule might obtain. [Suddarth v. Robertson, 118 Mo. 1. c. 293.] Cases may be found like Hisey v. Goodwin, 90 Mo. 366, holding it error to refuse to consider instructions in a law case tried to the court, but that holding runs with the fact that the evidence was *pro* and *con* in that case. Other cases may be found where a refusal to consider instructions was taken as tantamount to a refusal of them. [Karriger v. Greb, 42 Mo. 44.] So that, viewing the instant case from the angle of refusing to give or from that of refusing to consider (or treating it as a case with no instructions asked) it amounts to the same thing, to-wit, the merits are not affected by such incident, where, as here, appellant files a motion for a new trial raising the point that the judgment is not supported by the evidence, and as here, saves his exception to overruling it.

. The point, being without substance, is disallowed.

II. *Did Legrand G. Buford take a vested remainder under his mother's deed to Edwards?*

He died prior to his brother, William. Edwards was seized to William's use during his life. If Le-

grand G. Buford took a vested remainder on the delivery of the deed to Edwards, trustee, then the devise in his will was effective, though he died prior to William. If, on the other hand, Legrand G. Buford took only a contingent remainder (the contingency being that he survive his brother, William) then, while such contingent remainder or interest (that is, the mere "chance of having") was alienable subject to the chance of nothing passing on the contingency's not happening (Godman v. Simmons, 113 Mo. 1. c. 130 et seq.; Buxton v. Kroeger, 219 Mo. 1. c. 251 et seq.); yet such contingent remainder would not be devised for the very good reason that a will is ambulatory, revocable, it only takes effect at the death of testator and in this case the same event that makes the will effective, to-wit, death, makes it impossible for the contingency on which it was to take to happen.

The main question in the case, to-wit, was there a vested remainder in Legrand G. Buford created by his mother's deed, turns on a thorough analysis of that instrument thereby feeling out and establishing the intent of the grantor. Her intention is the worthy part, the principal thing, and, however difficult the task of ascertaining it, it is a necessary judicial task because the controlling maxim is: The intention of the man is the soul of the instrument (*Animus hominis est anima scripti*), and the rule of law is that when the intention of the grantor in a deed or the testator in a will is ascertained, then the bounden duty of a judge is to make that intention effective unless it contravenes some positive rule of law.

In interpreting deeds and wills, the foregoing rule is a cardinal one to which all others are mere aids. [Roberts v. Crume, 173 Mo. 1. c. 579; Cox v. Jones, 229 Mo. 1. c. 62; Chew v. Keller, 100 Mo. 1. c. 369.]

Moreover, in chief part, the guiding rules in discovering and uncovering the intent of a grantor or testator, if that intent be at all obscure, are these:

(a) The construction must not be on this or that part of the instrument to itself, but must be on the entire instrument from side to side, end to end and by its four corners—anywhere, everywhere, within its top, bottom and sides.

(b) The object to be subserved and the circumstances surrounding the grantor or testator are to be kept in view.

(c) His words are to be understood and taken in the sense indicated by the whole instrument.

(d) Effect must be given to all its words and clauses if that be possible in reason, so that each is made operative and effective to some purpose.

(e) The best mode of interpretation is to reconcile one clause with another where that can be done without straining the words by hairspun theories or overnice refinements.

(f) In a will, more than in deeds, and yet in the latter, the language used varies so materially and so much that precedents are rarely controlling in a concrete case except as they may furnish general aiding rules. Therefore the best interpretation of a will or deed is the instrument itself.

Agreeable to those pronouncements are: Cox v. Jones, 229 Mo. l. c. 62 et seq.; Armor v. Frey, 226 Mo. l. c. 666; Feller v. Lee, 225 Mo. l. c. 332; Chew v. Keller, 100 Mo. l. c. 369; Bean v. Kenmuir, 86 Mo. l. c. 669; Schorr v. Carter, 120 Mo. l. c. 413; Utter v. Sidman, 170 Mo. l. c. 294 et seq., which, in turn, but announce the harmonious sum of all correct modern judicial exegesis in those particulars.

Quickened and admonished by those general principles, attend to an analysis of the deed. Its *consideration* was the moral duty the mother, Eusebia, owed to her unfortunate son William to provide for his maintenance and care during his natural life out of the property once belonging to him. Next, her own support for her own life. The other considerations are

set forth as follows: ''For the love I have for my children and grandchildren hereinafter named and *other* good considerations to me moving,'' and the nominal sum of one dollar paid. It is argued for respondent that there is no indication that the mother in her conveyance had in mind any other grandchildren than those ''hereinafter named,'' to-wit, Buford and Legrand Ryland whose mother (her daughter) was dead. It is argued for appellant that that is too narrow, too starved a view under the glow of all the words of the deed. The fact being that Eusebia had at the time other grandchildren, as shown by this record, counsel for appellant point to that provision of the deed which speaks of the ''heirs'' of Legrand G. Buford and Florence I. Banks as within the range of her bounty should either her son Legrand G. or her daughter Florence I. be dead when the life uses fell in, when the trust became executed and when the title was to vest—all those things coming to pass at one and the same stroke. They point further to the fact that in the *habendum* the real estate was to be held (not only for the children and grandchildren ''as hereinbefore provided'' but) as follows: ''And to those who take the shares and remainder in fee, and their heirs and assigns forever.'' They argue that those expressions in the deed, when taken with the warranty clause, running in favor of the trustee ''and said other parties and their heirs and assigns'' and especially when taken in connection with the provision relating to the *time* when ''the title to said real estate and property shall go to and vest in'' Legrand G. Buford and Florence I. Banks, unerringly indicate that Eusebia had in mind grandchildren other than the two Rylands.

We state the contentions on the consideration phase of this deed as one useful element in leading up to and getting at grantor's intent; not for the purpose of letting the case turn on that as an only pivot, but because of its being of significance in throwing a dry

light upon the main clause presently considered. In leaving this phase of the matter we observe: The natural presumption would arise, we think, that the grandmother had not only ties of love and affection for the two Ryland grandchildren, but for her other grandchildren, and that the claims of affection and blood between her and all of them would presumably dictate the course the title should take under the same or similar circumstances. Presumably, we think, under similar circumstances (to-wit, the death of her son or other daughter prior to his or her being vested with title) she would want the title to go to those who might be of her blood relatives, to-wit, their children, or at least relatives of her blood. That view of it is within the reasoning of EARL, J., in Tillman v. Davis, 95 N. Y. l. c. 25.

Under the Statute of Descents and Distribution title descends through the blood and that statute but accords with the law of nature. [Hockaday v. Lynn, 200 Mo. l. c. 466 *post* and *ante*.] Preliminarily we deem it of importance, as a matter of *a priori* reasoning, to note the absence of anything in this deed evidencing a lack of love and affection for any of her other grandchildren although they were impliedly, though not expressly, named in the conveyance. If this be so and if presumably all her grandchildren stood on a par in her affection, barring the one fact that as to the Rylands their mother was dead, then, if any of her other children should also die prior to the time for the vesting of the title, there is nothing in this deed showing the grandmother would not want her grandchildren to take in lieu of their ancestor, it being allowable to reason from similar to similar.

When love and affection enter into the consideration of a deed its flow (and the objects of it) are not without some interpretative value. In Bean v. Kenmuir, 86 Mo. l. c. 669 (the only case I know of in which the writer of the opinion did not agree to his own opin-

ion, but writing one way, believed the other and dissented) it was said: "It is apparent that the actual consideration of the deed is one of love and affection, and we must find, if we can, the course the grantor designed and intended the title to take." In Huss v. Stephens, 51 Pa. St. 1. c. 289, stress was put upon the consideration of a deed expressed to be the love and affection of the grantor for his grandchildren. Says Woodward, C. J.: "He intended, by that sure token, that they should take an estate from him. Had he named them he could scarcely have been better understood." In that case the grant was to the "heirs of Andrew Lantz, Jr., son of the grantor" then in full life.

Coming now to the pivotal clause in the deed, we will presently restate it, prefacing some further observations by way of analysis of the instrument, *viz.*: The conveyance did not create a dry trust to be at once executed under the Statute of Uses. *Contra,* it was a live trust burdened with manifold duties and responsibilities on the part of the trustee seized to uses. The primary use ran in favor of the unfortunate son, during his life, for the net rents and profits of the trust estate. If he died prior to the mother, there was a like use in her favor during her life. Observe, up to this point in the deed, to-wit, her death or his death (outside of the consideration clause of the deed) there were no words tending to show the course the whole title should take on the equitable life estate falling in. In many deeds that peculiarity is not present, but it is present here, is to be reckoned with and stands to be assigned some office. When the surviving owner of this equitable life estate dies, it was at that moment the grantor for the very first time takes up the question of what was to become of the title, up to that time vested in the trustee. She then for the first time speaks of *title* and the *vesting of title*. Attend to her words, *viz.*:

"On my death should. I survive the said William M. Buford, and on his death should he survive me, the said trust herein provided for shall terminate and the title to said real estate and property shall go to and vest in my two other children, Legrand G. Buford and Florence I. Banks, one-third each, or to their heirs should they or either of them be dead, and the remaining one-third shall vest in my two grandchildren, Legrand Ryland and Buford Ryland, as joint tenants and to their survivor, for life, with the remainder to my two other children Legrand G. Buford and Florence I. Banks, and their heirs, share and share alike, in fee simple forever. Any funds on hand with said trustee on the termination of this trust is to be paid over and disposed of in the same way as is provided for the disposition of the land except the share of the said Ryland grandchildren therein shall be paid to them absolutely."

Under that conveyance, where was the title up to the time of William's death? Clearly in the trustee. Vest means to accrue to, to be fixed, to take effect. [Black's L. Dict. (2 Ed.), tit. "Vest."] Now, when was the title to *vest,* to be fixed, in anyone else? Clearly on the termination of the trust. In whom was it then to vest by the express command of the grantor, who dominated the situation? Clearly in Legrand G. Buford and Florence I. Banks, one-third to each, but, observe (for thereby weighty matter hangs) only on a contingency, to-wit, on the contingency of their being alive. The title goes and vests in the *alternative.* Thus, if they are alive then to or in them. Otherwise, what becomes of it? Look again to the words of the deed, to-wit: *"or to their heirs should they or either of them be dead."* When the grantor passed from the two-third interest to the Ryland one-third out of which another life estate was carved (to-wit, a joint one with the right of survivorship) the phraseology of her deed changes somewhat and the remainder runs "to

my two other children, Legrand G. Buford and Flor-
ence I. Banks and their heirs, share and share alike,.
in fee simple forever.'' It will be observed that in
the first instance the word *or* is used followed by 'to
their heirs should they or either of them be dead,''
and in the next instance the word *and* is used and noth-
ing is said about the death of Legrand G. Buford or
Florence I. Banks but the ''and'' is followed by ''their
heirs, share and share alike, in fee simple forever.''

There was another contingency in the mind of
grantor, namely, that the trustee might be in funds.
when his trust terminated. What disposition was he
to make of them? They were to be paid over and dis-
posed of in the same way provided for the disposition
of the land except the Ryland share was to be paid to
them absolutely. There is nothing to show that such
contingency arose, but if it had arisen would the trustee
have been authorized to pay Legrand G. Buford's.
share (he then dead) to his administrator or executor,
or must he pay it over to the ''heirs'' of Legrand G.
Buford precisely as the title to the real estate went in
the event of his death before the termination of the
trust?

It is obvious that seeking the intent of the tes-
tator, through the analysis of this deed, we have
reached a point where we must consider the legal sig-
nificance of the use of the word *heirs*. We must con-
sider the fact that the word *or* was used in one in-
stance and the word *and* in the other in the clause
referring to *heirs*. We must consider whether the
word *heirs* is ever used in the sense of children or
otherwise than as a word of limitation and if so, when.
We must consider whether *or* may not be used for *and*
and *vice versa* where the apparent dominating intent
of the grantor calls for that interpretation. And we
must take all those words in the sense indicated by
the whole instrument, and the object to be subserved
thereby. Let us look to those matters.

In the first place, learned counsel on neither side take the position that the change in phraseology in the disposition made of the Ryland one-third, as over against the disposition of the Buford third, is of any significance by itself. Both sides present their case at our bar on the implied theory that the deed should be so construed that all three thirds are subject to the same limitations in so far as the question of the remainder being vested or contingent is concerned. Put differently (barring for the present the will), the case is presented to us on the theory by appellant that if, by the deed, he loses all interest in the Ryland third then he by that token loses all interest in the Buford third. So, respondent's counsel submit the case on the theory that if Legrand G. Buford did not take a vested remainder in his third he took no vested remainder in the Ryland third. Such concessions, we take it, proceed on the broad and sensible idea that it would be unreasonable to conclude that the grandmother would intentionally introduce such confusion in the devolution of the estate as would spring on the theory there was created a vested remainder in one-third and a contingent remainder in the other. That, making "confusion worse confounded," would be a mischievous interpretation not to be made so long as there were two ways about it.

In the next place the general rule is that the word heirs has a "technical" or "artistic" meaning in wills and deeds. Ordinarily it is a word of limitation as contradistinguished from one of purchase and a party coming within that designation is held to take by descent or inheritance and not as a purchaser. [Garrett v. Wiltse, 252 Mo. 699.] The curious may consult that case as an attempt to throw light on the ordinary use of the word *heirs* as a word of limitation and not of purchase. But an exception to the rule is as well established as the rule itself, *viz.*, that if the will or deed shows by its context that the word was

used as one of purchase, that is, as equivalent to children or grandchildren, as one not indicative of an expanding of the estate of the ancestor into an estate of inheritance, but as one designating a new class of beneficiaries, as one operating to give the estate imported by it to the heirs described not derivatively but originally, then the word *heirs* is a word of purchase, but the presumption is it was used as a word of limitation and so it is taken unless the other meaning appears from the intendment of the instrument. [Garrett v. Wiltse, supra; Roberts v. Crume, 173 Mo. l. c. 579 et seq.] The Chew-Keller case (100 Mo. l. c. 369) formulates the doctrine of a line of others, prior and subsequent, in this way:

"The word 'heirs' will be considered as a word of limitation and not of purchase, unless the will shows clearly that it is used to designate a new class of beneficiaries. [2 Washb. Real Prop (5 Ed.), 654; Landon v. Moore, 45 Conn. 422; Thurber v. Chambers, 66 N. Y. 42; Linton v. Laycock, 33 Ohio St. 136.] So the word 'heirs' will be held to mean child or children when necessary to carry out the clear intention of the testator. [Haverstick's Appeal, 103 Pa. St. 394.] Indeed, these rules apply as well to deeds as to wills. [Rines v. Mansfield, 96 Mo. 394; Waddell v. Waddell, 99 Mo. 338.]"

The exception to the general rule requiring the word *heirs* to be taken as a word of limitation, *i. e.*, the exception we have been speaking of, which, when the context points the way, reqires it to be taken as one of purchase, is merely putting in force the master rule for interpreting a deed or will by the intention of the grantor or testator. Agreeable thereto is Waddell v. Waddell, 99 Mo. l. c. 345-6, whereat we said:

"There is no lack of authority in support of the position that, if the words used in the context warrant it, and such construction will carry into effect the manifest intention that moved the execution of the

deed or the signing of the will, then such intention
will be made effectual, and the word *heirs* will be con-
strued as meaning *children,* and *vice versa,* and *child-
ren* as *issue, grandchildren* or *descendants,* if· the jus-
tice or reason of the case requires it.  [4· Kent (13
Ed.), 419; 3 Wash. Real Property (5 Ed.),· 282; Haver-
stick's Appeal, 103 Pa. St. 394; Warn v. Brown, 102
Pa. St. 347.]  And the fact that a *deed* is the instru-
ment ̇requiring such liberality of construction, pro-
vided such construction is just and reasonable and· ac-
cords with the evident intent of the grantor, and it is
consistent with the principles of law, should not be al-
lowed to defeat such liberal and beneficial construction
any more than if the instrument under examination
were a *will.*  [Huss v. Stephens, 51 Pa. St. 282, and
cases cited; Wyth v. Blackman, 1 Vesey, Sr., 196; Royle
v. Hamilton, 4 Vesey, 437.]''

By the same cardinal rule of construction whereby
the intention is first ascertained and then made effect-
ive, the word *or* may be read *and* or *vice versa.*  [29
Cyc. 1505 et ̇seq.; State v. Bulling, 100 Mo. 1. c. 93;
Maguire v. Moore, 108 Mo. 1. c. 273.]

*Or* and *and* are not treated as interchangeable in
judicial exposition; for ''or'' does not mean ''and''
nor does ''and'' mean ''or'' in precise speaking or
writing, but when the literal reading introduces ab-
surdity or hardship the one word may be put as a sub-
stitute for the other, if thereby obscurity is not in-
troduced, but, to the ·contrary, the obvious intent is
subserved.

There is another principle to be reckoned with,
namely, in case of doubt the law favors vested estates
and an estate should be held to vest at the earliest
possible moment, unless· a contrary intention is clearly
manifested in the grant.  [Tindall v. Tindall, 167 Mo.
1. c. 225.]

Mindful of each and every of the premises, we

have critically studied this deed in the light of those applicable principles of construction and those applicable rules of law and, not without hesitation at first, for the question is nice, have come to the conclusion that Legrand G. Buford did not take a vested remainder at the time of the execution of his mother's deed, nor, being dead at the appointed time, did he ever take a vested remainder. We think the whole clear intendment of the conveyance leads up to the reasonable conclusion that the title was not intended to vest in any other than the trustee until the death of William M. and Eusebia Buford and that on the death of the survivor of them, then, and not till then, was the estate in remainder to vest. Our conclusion is also that then it was to vest on the happening of a contingency *and in the alternative*. The contingency was that Legrand G. Buford should then be alive. The alternative was that if he be dead it should vest in his heirs and that the grantor meant to use the word *heirs* in the sense of children and not in an artistic or technical sense. Any other view assigns no meaning or office at all to the phrase, ''or to their heirs, should they or either of them be dead.'' Did she not have the legal right to say when the estate should vest, and in whom? Did she not exercise that right? Did its exercise contravene any rule of law? In respondent's view that phrase might as well be eliminated and when the grantor spoke those words she might as well (nay, much better) have held her tongue. But the common sense of it lies another way. The just view is to assign an office to those words and not make of them an empty phrase or a rhetorical flourish to perish by construction. We are very well aware of the process of reasoning by which that phrase could be eliminated as meaningless, to wit, that the bare word *heirs* adds nothing to the deed under our statute (R. S. 1909, sec. 2870) and that, as no living person can have an heir, death was necessary to create

an heir in the law of conveyancing without saying so. Therefore saying so avails nothing. But as the phrase is introduced by the word *or* and, taken as a whole, it fills a substantial office in designating who should take the estate at the instant of time when by the command of the deed it was to vest, in case death had interposed prior to that time, we are loath to apply overnice refinements and subtleties to rid the deed of that pregnant phrase solemnly set down.

There is much refinement in the learning on contingent and vested remainders. The definitions of the one and the other are well marked down in the books. The difficulty has always been in close cases to apply those definitions to the particular facts in judgment in each particular case. Sometimes, in judicially (but injudiciously) undertaking to add matter expansive or explanatory of those definitions, it has resulted in trying to explain something already obscure by something more obscure. *Obscurum per obscurius*. We shall avoid that pitfall. Blackstone defines a contingent remainder thus (2 Bl. Comm. *169):

"Where the estate in remainder is limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event; so that the particular estate may chance to be determined and the remainder never take effect."

Bingham on Descents (p. 125) defines a contingent remainder thus:

"A contingent remainder is that part of an estate in fee bestowed conditionally upon one of two or more persons, which one is not certain; the rest of which is bestowed definitely upon some other person or persons named. The part not thus definitely disposed of to some particular person or persons, is provided to go to some other person or persons of two or more named, which of the two or more is left uncertain, and is to be fixed and made certain by succeeding events. The remainder itself is certain, but the per-

son who is to have it is uncertain until it is determined by the events named."

Those definitions we approved in Dickerson v. Dickerson, 211 Mo. l. c. 490.

Minor (adopting from Fearne) defines it (2 Minor Inst., p. 337):

"A contingent remainder is a remainder limited to an uncertain person, or on an uncertain event, or so limited to a certain person, and on a certain event, as not to possess the present capacity to take effect in possession, should the possession become vacant."

Fearne points out, that (1 Fearne, Rem., pp. 373-4) ". . . two or more several contingent fees may be limited merely as substitutes or alternatives one for the other, and not to interfere; but so that one only take effect, and every subsequent limitation be a disposition substituted in the room of the former, if the former should fail of effect. [Giving an example.] And this sort of alternative limitation was termed a contingency with a double aspect . . . and these were limitations of which the one was not expectant upon, and to take effect after the other, but were cotemporary; to commence from the same period, not indeed together, but the one to take effect in lieu of the other, if that failed."

Washburn, speaking to contingent remainders, says (2 Wash. on Real Prop. [5 Ed.], p. 608):

"A contingent remainder is one whose vesting, or taking effect in interest is, by the terms of its creation, made to depend upon some contingency which may never happen at all, or may not happen within a requisite prescribed time, by reason whereof its capacity of vesting or taking effect in interest may be forever defeated. Or, in the language of another, it is one 'which is limited to a person who is not ascertained at the time of the limitation, or which is referred for its vesting or taking effect in interest to an event which may not happen till after the determina-

tion of the particular estate,' or upon the happening of some uncertain and doubtful event, or where the person to whom it is limited is not ascertained or yet in being. . . . Until the contingency has happened, the remainder is rather a possibility in its character than an estate; although it has become a familiar quality of an estate, to understand and apply which involves much nice learning. It is always an executory interest from its very nature.''

Says this court, through BLACK, J. (Rodney v. Landau, 104 Mo. l. c. 257):

''The vested or contingent character of a remainder is determined, not by the uncertainty of enjoying the possession, *but by the uncertainty of the vesting of the estate.''*

Having those definitions in mind, we lay great stress on the fact that a *time* was nominated in the deed itself for the estate to vest in those who were to take the remainder, and that at that crucial time there was a contingency provided, and an alternative sprang, pointing the course the title was to take in one of two ways—one way in case of death, the other in case of life.

While, as said, the case is a close one, bristling with difficulties, yet we think the conclusion announced is well within (if not *all* the facts, at least) the reasoning of the late cases of Buxton v. Kroeger, 219 Mo. l. c. 245; Dickerson v. Dickerson, 211 Mo. l. c. 490, and others collated in appellant's brief from our own and the highest courts of other states. The tendency of modern decisions on questions of contingent and vested remainders has been more and more to break away from the technical refinements of the old common law learning (Utter v. Sidman, 170 Mo. 284; Williamson v. Brown, 195 Mo. 313; Godman v. Simmons, 113 Mo. 122; O'Day v. Meadows, 194 Mo. 588; Buxton v. Kroeger, 219 Mo. l. c. 245) and allow deeds to be effective in line with the intent of their faces as

gathered from the everyday, good sense of their language.

If it be asked where was the equitable estate in remainder after Eusebia executed her deed by delivery, the answer must be that it is of no consequence where it was. It did not have to vest at the making of the deed. Under the law of real property as now administered in this jurisdiction, a deed may "create a freehold estate *in futuro,* that is, a contingent estate *per auter vie* without creating at the same time and by the same deed or instrument a particular estate to support it," as required by the old learning. [O'Day v. Meadows, 194 Mo. l. c. 621 et seq.; R. S. 1909, sec. 2876; Buxton v. Kroeger, 219 Mo. 224.]

On the agreed case on the facts, on the reasoning employed and the authorities cited the conclusion must be the trial judge, whose learning and wisdom in the law we rate high, erred in applying the law to the agreed case, and, to use the formula of the old Greeks, he will pardon us for not agreeing with him. There are cases the reasoning of which would possibly sustain the judgment, and others *contra.* Uniformity, however serviceable, has not always been possible even in judicial exposition although it proceeds on contemplation and not impulse. When Lord Sandwich complained in the House of Lords that he did not understand what orthodoxy and heterodoxy meant, and Bishop Warburton whispered in an aside, "Orthodoxy, my Lord, is my doxy; heterodoxy is another man's doxy," the remark no little illuminates some judicial doctrines on remainders. Without taking an extreme position in animadverting upon this doxy and against that, yet it is clear to me the conclusion arrived at and announced is sustained by reason and principle. This conclusion makes it unnecessary to consider the question of intestacy as to the Ryland one-third, bottomed on a construction of Legrand G. Burford's will;

for it makes that will empty and wholly inoperative as a devise of the land in question.

Accordingly the judgment is reversed and the cause remanded with directions to make the interlocutory judgment in partition effective in favor of appellant and to modify the final judgment on the report of sale and the distribution of the proceeds the same way.

We do not understand the appeal as intended to upset the sale itself. As we gather the controversy ranges around the right of appellant to a share in the land and his right to the proceeds of that share (now in the receiver's hands) as between him and Lida M..Buford. The directions encompass that end and protect appellant's rights as herein determined. All concur.