LYDA B. DONALDSON and LUCILE E. DONALDSON v. ROBERT T. DONALDSON and Z. R. ICHE, Appellants.

Division One, December 22, 1925.

1. **APPEAL: Dismissal: Failure to File and Serve Abstract.** Where appellant, after receiving a transcript of the evidence from the court stenographer, had only three days in which to have a bill of

exceptions approved and filed, and to prepare, print and serve an abstract and brief in the case, his appeal cannot properly be dismissed for failure to serve his abstract and brief thirty days before the case is set for hearing in this court.

2. **CONVEYANCE: Remainder: Alienable.** A remainder, whether vested or contingent, is alienable. If contingent it may turn out that the remainderman's deed conveyed nothing; but if vested, or if the title becomes vested in the contingent remainderman upon the death of the life tenant, his grantee steps into his shoes, and takes the interest attempted to be conveyed.

3. ————: **To Son: To Children at His Death: Contingent Remainder: Reverter upon Condition.** A deed by parents to a son declaring in the *habendum* that "at the death of the second party the above-described real estate shall vest in his children and if he has no children alive one-third of the real estate is to go to his widow and the rest returns back to his parents" creates a contingent remainder, and fixes the time the contingency is to determine and the title is to vest, and that time is not the date of the deed, but the date of the son's death. If a single child survives the son and he leaves a widow, one-third of the real estate will go to the widow, and the balance to such surviving child or children. But the word "children" as used in the deed does not include grandchildren or later descendants of the son, and although his parents are now dead, and he has had five children, four of whom are now living, and one has died leaving children of his own, such descendants can never take under said deed, and if the other four die before the son two-thirds of the real estate will revert to the right heirs of the son's parents; and although the son's wife, living when the deed was made, is now dead, he may still leave a widow, and if he leaves a surviving widow and a surviving child, one-third of the estate will go to such widow, but if he leaves no surviving widow or child the entire fee in remainder will descend to the heirs of the grantors according to the Statute of Descents and Distribution.

4. ————: **Contingent Remainderman: Deed During Life Estate.** By a deed from parents to a son declaring in the *habendum* that at the death of the son the real estate shall vest in his children and "if he has no children alive" one-third of it "is to go to his widow and the rest returns back to his parents," a child of said son took only a contingent remainder, and said child being now deceased a deed made by such child during the life of said son conveyed no title or interest, for the right of such child to take any interest in the land was made dependent upon the child being alive at the death of the son. But where the four surviving children, being con-

311 Mo. Sup.—14.

tingent remaindermen, conveyed their entire interests to a common grantee, during the life of said son, said grantee, if any one of them survives the life tenant (or son), will take whatever interest all of them would have taken had they all survived the son. The contingent interest of the child who is now dead has gone to swell the contingent interest of those who survive, and if all. of them except one dies during the life of the son, the deed of that one, already executed, has conveyed to said grantee the entire two-thirds of the land.

5. ———: **Life Estate: Subject to Support.** A conveyance by the owner of a life estate and his wife "subject to the support of the first party until their death" is not void, but conveys to the grantee the right to possession, with which the right·to support has nothing to do, but the grantee can take all the rents and profits and out of them comply with the obligation to support, without yielding possession. A reservation for support is not necessarily an interest in the land, or a lien thereon, but an agreement or obligation to support, and at most a ground for setting aside the deed for failure to support. And although the life tenant conveys to the contingent remaindermen (his children) and they later convey to a common grantee during his life, their deeds conveying their entire interest will convey his life estate, although the deeds may later prove unavailing as conveyances of the fee.

6. ———: ———: **Sale by Sheriff.** A sheriff's deed made upon execution levied on a life estate, if valid, does not convey the fee, but only the debtor's life estate.

7. ———: **Deed by Sheriff: Transcript Execution: Nulla Bona Return: Recitals Prima-Facie True.** A sheriff's deed, reciting a judgment before a justice of the peace, a filing of the transcript thereof with the circuit clerk and the issuance of a transcript execution and sale thereunder, is prima-facie proof of the truth of all recitations therein, and if it fails to recite that an execution was issued by the justice of the peace and that *nulla bona* return was made thereon the burden is upon the party objecting to it to show that there were no such execution and return.

8. ———: ———: **Homestead.** A life tenant who conveyed his life estate prior to the rendition of judgment for debt against him, had no homestead to be set off at the execution sale by the sheriff.

---

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2440, p. 609, n. 14; Section 2442, p. 611, n. 30 New. **Deeds,** 18 C. J., Section 203, p. 256, n.·73; Section 237, p. 274, n. 22; Section 287, p. 308, n. 70; Section 365, p. 351, n. 43. **Estates,** 21 C. J., Section 153, p. 997, n. 26 New; Section 155, p. 997, n. 40; p. 998, n. 42; Section 156, p. 998, n. 61; p. 999, n. 62, 66; Section 162, p. 1005, n. 86 New. **Executions,** 23 C. J., Section 706, p. 704, n. 36 New; Section 784, p. 743, n. 70; Section 789, p. 746, n. 15.

Donaldson v. Donaldson.

Appeal from Shelby Circuit Court.—*Hon. V. L. Drain*, Judge.

REVERSED AND REMANDED.

*Harry J. Libby* for appellant.

(1)   The deed from James M. Donaldson to Robert T. Donaldson, dated October 12, 1885, created a life estate in said lands in Robert T. Donaldson, the son, and by express terms postponed the vesting of the fee until "the death of the second party" (Robert T. Donaldson). Said Robert T. Donaldson is yet living, the fee in remainder has not yet vested, and will not vest until his death. The fee was to vest on the happening of a contingency, and in the alternate. The contingency was that children of Robert T. Donaldson should be living at the date of his death. The alternative was that it should vest, one-third in the widow of said Robert T. Donaldson, and the remaining two-thirds should revert to his parents, the grantors. Eckle v. Ryland, 256 Mo. 424; Buxton v. Kroeger, 219 Mo. 235.   (2)   Since the deed by express terms postponed vesting of the fee until the death of Robert T. Donaldson, who is yet living, and was then to vest only in such of his children as were then alive, the remainder was a contingent and not a vested one. And since Enoch E. Donaldson, died September 24, 1921, during the life of the life tenant said Enoch E. Donaldson took no part of the fee under the deed of James M. Donaldson and plaintiffs inherited none from him. The only title appellants have is that obtained and held by them under deeds from the other children of Robert T. Donaldson. And that is a mere expectancy that may and may not vest in defendants, depending on their being alive at the date of death of said Robert T. Donaldson. If they, or any of them be alive at that time they will take, not by descent from Robert T. Donaldson, but as purchasers under the deed of James M. Donaldson, who gave them the estate in remainder by way of sub-

stitution for said Robert T. Donaldson. Dickerson v. Dickerson, 211 Mo. 496. (3) The circuit court erred in holding void the clause in the deed from Robert T. Donaldson to his children. By the findings the learned circuit judge held by this clause the grantor undertook both to convey and reserve the same thing and that this clause conflicted with the granting clause, and should be most strongly construed against the grantor and was therefore void for repugnancy. The ancient rule that a grantor in a deed must express his intention in set and technical language, and in proper place, and in the right order and clause of the deed, and that in event of repugnancy the first words were to govern, and all else be rejected and adjudged void for repugnancy, irrespective of the intention of the grantor, has long since been abandoned in Missouri, and in lieu thereof has come the modern doctrine that the cardinal rule to be observed in construing a deed is to ascertain the intention of the grantor and enforce it. Such intention may be expressed anywhere in the deed and in any words that will impart it, and courts will enforce it no matter in what part of the instrument it may be found. Utter v. Sidman, 170 Mo. 293; Williamson v. Brown, 195 Mo. 336; Buxton v. Kroeger, 219 Mo. 246; Eckle v. Rayland, 256 Mo. 424. (4) In case of repugnancy all parts of a deed should be made to harmonize if practicable upon a construction of the whole instrument. If both parts of a deed may well stand together they will be construed to have that effect rather than be held repugnant. That construction should be given which will develop consistency rather than inconsistency in its parts. McCullock v. Holmes, 111 Mo. 445; Chew v. Keller, 171 Mo. 215; Williamson v. Brown, 195 Mo. 313. (5) Enoch E. Donaldson, under whom respondents claim both by deed and by descent was one of the grantees in the deed (Plaintiffs' Exhibit 2), from Robert T. Donaldson to his children. His children accepted that deed and spread it of record and claimed, held and conveyed under it. The estate conveyed was by express terms of the

deed subject to the support of the grantor Robert T. Donaldson. The words, "subject to" means subservient to, subordinate to, to control (Century Dictionary). As used in the clause of the deed here, they mean, charged with. Bredell v. Fair Grounds Co., 95 Mo. App. 686; Walker v. Goodsill, 54 Mo. App. 631. The estate conveyed was by express terms of the deed subject to and charged with the support of Robert T. Donaldson. It was perfectly lawful for the father thus to impose upon the estate conveyed a charge for his own support and the grantees therein and their grantees and heirs took the land burdened with that charge. Fuller v. Devolld, 144 Mo. App. 93; Westminster College v. Piersol, 161 Mo. 270; Tucker v. Tucker, 106 N. Y. 713; Martin v. Martin, 44 Kan. 295; Goudy v. Goudy, Wright (Oh.) 410; Goodplaster v. Leathers, 123 Ind. 121; Ringrove v. Ringrove, 170 Pa. St. 503; McClure v. Cook, 39 W. Va. 579; Rohn v. Odenwelder, 162 Pa. St. 346; De Watts Appeal, 20 Pa. St. 236; Bonebrake v. Summers, 193 Pa. St. 22. (6) The court erred in admitting the sheriffs' deed from Abram Kemper to T. A. Gorden, in evidence, for the reason that said sheriff's deed was void, for the following reasons: (a) No judgment on which it was based was introduced in evidence. Justice courts are courts of inferior jurisdiction and the same favorable presumptions of regularity and validity do not obtain as to them as in the case of judgments of courts of record. One claiming title or resting a defense on a sheriff's sale must show a valid judgment as well as an execution. Morrison v. Dent, 1 Mo. 246; Wernecke v. Wood, 58 Mo. 352; Orchard Co. v. Gilmore, 159 Mo. App. 219. (b) By express terms of Sec. 6288, R. S. 1889, the applicable statutory law since the transaction occurred in 1898, an execution was required to issue out of the justice court and a return of *nulla bona* made, before a transcript could be legally filed thereon and a sale of real estate without observing this requirement passed no title. Lindeman v. Edson, 25 Mo. 105; Burk v. Miller, 46 Mo. 258; Sec. 6288, R. S. 1889. Neither T. A. Gorden, the

judgment creditor, nor Lyda B. Donaldson his grantee were innocent purchasers, since both had actual knowledge and the deed of Robert T. Donaldson being of record in Shelby County, both had constructive knowledge thereof. (c) Said sheriff's deed was void for the further reason that the life estate of said Robert T. Donaldson in said lands constituted the homestead of said Robert T. Donaldson. Kendall v. Powers, 96 Mo. 142. And his homestead attached at the date of the deed of the ancestor James M. Donaldson, where as here, it was followed by occupancy by the grantee a short time thereafter. No commissioners were appointed to set off the homestead and the proceeding was wholly void. Vogler v. Montgomery, 54 Mo. 577; Harrington v. Utterback, 57 Mo. 519; Holland v. Kreider, 86 Mo. 59; Biffle v. Pullman, 114 Mo. 50; Creech v. Childers, 156 Mo. 338; White v. Spencer, 217 Mo. 242; Childers v. Peckenpaugh, 219 Mo. 455; Pocoke v. Peterson, 256 Mo. 520.

*W. L. Hamrick* and *Ben Franklin & Son* for respondents.

(1) Under the deed of James M. Donaldson and Julyan A. Donaldson, his wife, to Robert T. Donaldson, dated October 12, 1885, Robert T. Donaldson took a life estate in the land in question and his children took a vested remainder, which either or both grantor or grantee could sell or convey. Dunbar v. Sims, 222 S. W. 838; Huntington Real Estate Co. v. Megaree, 217 S. W. 301; Green v. Irvin, 274 S. W. 682. (a) The expression "to have and to hold the same unto the said second party till his death, at the death of the second party the above-described real estate shall vest in fee in his children, and if he has no children living, then one-third of the real estate is to go to his widow and the rest return back to his parents," has frequently been before the Supreme Court for interpretation and uniformly held to relate to the time when the devisee shall have possession and has nothing to do with the vesting of the estate.

Jones v. Waters, 17 Mo. 587; Waddell v. Waddell, 99 Mo. 338; Chew v. Keller, 100 Mo. 368; Burns v. France, 131 Mo. 647; Tindall v. Tindall, 167 Mo. 218; Heady v. Hollman, 251 Mo. 632; 2 Underhill, Law of Wills, 861; 2 Jarman on Wills (6 Ed.) 357; Warne v. Sorge, 258 Mo. 162. (b) The law favors vested estates and where there is doubt as to whether the remainder is vested or contingent, the courts will construe it as vested remainder. Dunbar v. Sims, 222 S. W. 838. (2) By the deed of Robert T. Donaldson and Ruth E. Donaldson, his wife to James S. Donaldson, William M. Donaldson, Lillie A. Donaldson, Enoch E. Donaldson and Lee O. Donaldson, a quitclaim deed dated October 2, 1897, being the land in question, whatever interest the said Robert T. Donaldson had in the land in question he conveyed; he had a right to sell it, and if he had a right to sell, the children had a right to buy it. These rights were exercised by both parties. The children owned the vested remainder and they bought the grantor's life estate, or whatever his interest may be termed. These several interests, as held by the trial judge, were vendible interests. Huntington Real Estate Co. v. Megaree, 217 S. W. 301. (a) This conveyance is for both a good and valuable consideration, to-wit "love and affection and $70" receipted for. The grantor was seeking to divest himself of any sort of interest he had therein, as appears from his language, to-wit: "Do justly, absolutely remise, release and forever quitclaim unto the parties of the second part their heirs and assigns forever all such right and title as we have or ought to have in the land in question. To have and to hold the premises aforesaid unto them, the said parties of the second part, their heirs and assigns to the only use and behalf of the said parties of the second part, their heirs and assigns forever," clearly attempting and in fact divesting himself of the use to support, and quoting almost the identical language in the deed in which he claims a use and right to support, "so that neither the parties of the second part or any person or persons for or in their names or behalf shall

or will hereafter claim or demand any right or title to the premises aforesaid or any part thereof.'' (3) All of the children and most of the grand-children of Robert T. Donaldson are alive to-day except his son, Enoch E. Donaldson. If Robert T. Donaldson were to die to-day where would the fee in this land be? Who would be the just and equitable owner of this title? See authorities supra.

GRAVES, J.—Action to quiet the title to 140 acres of land in Shelby County. The agreed common source of title is James M. Donaldson, who by a warranty deed, being joined therein by his wife Julyan Donaldson, conveyed at least some interest in the land, or its use, to their son, Robert T. Donaldson, one of the defendants herein. The other defendant, Iche, claimed no interest in the land, other than being the tenant of Robert T. Donaldson. Robert T. Donaldson later, in the year 1897, made a deed of quitclaim (rather peculiar in language and form) to his five children. He was joined therein by his then wife, who was the mother of such children.

The record and the contentions of the parties call for a construction of the two deeds aforesaid. The deed of James M. Donaldson and wife (omitting the description of the land) reads:

"This Indenture made and entered into this 12 day of October, A. D. in the year of our Lord one thousand eight hundred and eighty-five, between James M. Donaldson and Julyan A. Donaldson, his wife, first party, and Robert T. Donaldson second party, all of Shelby County, State of Missouri.

"Witnesseth, that we the said first party for and in consideration of the natural love and affection which we entertain towards our son R. T. Donaldson the second party as well for the further consideration of him returning to us by deed lands that we gave him. [Here is described a tract of 130 acres in Section 22, Township 56, Range 12.]

"The said second party now have this day granted, bargained and sold and by these presents do grant bargain sell and convey and confirm unto the said second party the following described real estate lying in the County of Shelby and State of Missouri, to-wit: [Here is described 140 acres in Section 16, Township 56, Range 12] to have and to hold the same unto the said second party for the sole and exclusive use and benefit of said second party till his death, at the death of the second party the above-described real estate shall vest in fee in his children and if he has not children alive then one-third of the real estate is to go to his widow and the rest to return back to his parents, the said real estate is not to be liable in any manner for his debts or liabilities the said real estate is not to be subject to the disposal of the said second party only on this express condition that the proceeds of sale of the said real estate shall be vested in other real estate for the same use and benefit as herein mentioned otherwise said sale shall be nul and void and we the said first party do hereby covenant with the second party that we are lawfully seized in fee of the above-granted premises that the fee from all incumbrances that we have good rite to sell and convey the same unto the said second party for the purposes before expressed and that we will warrant and defend the title to the same against the claim or claims of any and all persons whatsoever.

"In Testimony Whereof we the first party do hereunto set our hands and seals the day and year first-above written, the foregoing land is bound for the support of first party.

"JAMES M. DONALDSON (Seal)

"JULYAN A. DONALDSON (Seal)

"State of Missouri, County of.  ,ss.

"On this 12th day of October, 1885, before me personally appeared, James M. Donaldson and Julyan A. Donaldson, his wife, to me known to be the persons described in and who executed the foregoing instrument

and acknowledged that they executed the same as their free act and deed.

"In Testimony Whereof, I have hereunto set my hand and affixed my official seal at my office in Clarence, the day and year first-above written.

"A. C. Mallory,

"Justice of the Peace."

"J. D. Dale, Rec.

"Filed Oct. 14, 1885, at 4:10 p. m."

Said Plaintiffs' Exhibit 2, being in words and figures as follows, to-wit:

"Plaintiffs' Exhibit 2.

"This ententure, made and entered into this the second day of October in the year of Our Lord One thousand eight hundred and ninety-seven between Robert T. Donaldson and Ruth E. Donaldson, his wife parties of the first part, and James S., Wm. M., Lillie A., Enoch E. and Lee O. Donaldson all of the town of Clarence, County of Shelby and State of Missouri, parties of the Second Part:

"Witnesseth, That we the parties of the First Part for and consideration of the natural love and affection towards the parties of the second part our bodily heirs as well as for the further consideration Seventy ($70) Dollars, to us paid, the receipt of which is hereby acknowledged, have this day remised, release and forever quit claim and do by these presence justly and absolutely remise, release, and forever Quit Claim unto the parties of the second part, their heirs and assigns forever, all such right and title as we the parties of the first part have or ought to have in the following described real estate lying in the County of Shelby and State of Missouri to-wit: [Same land conveyed by the James M. Donaldson deed, supra, and other lands.]

"To have and to hold the premises aforesaid unto them the said parties of the Second Part, their heirs and assigns, to the only use and behalf the said parties of the second part their heirs, and assigns forever, so

that neither the parties of the first part or any other person or persons for or in our names and behalf, shall or will hereafter claim or demand any right or title to the premises aforesaid, any part thereof, *the aforesaid real estate is to remain undivided until sold or the death of first party each member of the second part is to share equal in the aforesaid real estate,* shall be subject to the support of the first party until their death or until it is sold.

"Given under our hand the day and year above written.

"ROBERT T. DONALDSON   (Seal)
"RUTH E. DONALDSON   (Seal)"

The lands covered by this deed includes the land described in the petition of the plaintiffs, and described in the James M. Donaldson deed. Other lands are also included. The construction of these two deeds will largely determine this case. The plaintiffs in this case are the wife and only daughter of Enoch E. Donaldson, one of the grantees in the deed from Robert T. Donaldson. They claim it all by *mesne* conveyances from the other four children of Robert T. Donaldson, being the four other grantees in the last-described deed aforesaid. Title is likewise claimed under a sheriff's deed to Lyda B. Donaldson, the wife of Enoch and the mother of the co-plaintiff, Lucille.

The details of the evidentiary facts and other deeds will be left to the opinion. It suffices to say that the trial court decreed title in plaintiffs, and defendants have appealed.

I.   Our record of submission shows the motion to dismiss was taken with the case, but in making such order we overlooked the previous order made in this case. The motion to dismiss the appeal was filed April 4, 1925. The case has had its ups and downs

Dismissal.

here. The short transcript was filed by appellants September 14, 1923. On January 13, 1925, the appeal was dismissed for failure to prosecute the appeal.

The case was set for hearing on that date. On January 15th a belated stipulation for continuance was filed, asking that the cause be continued to the next term (April term, 1925) of the court. January 16, 1925, the order of dismissal was set aside, and the cause continued as per the stipulation to the April term, 1925.

Then as said on April 4, 1925, this motion by respondents to dismiss the appeal was filed, and on April 13, 1925, such motion was sustained. On April 18, 1925, appellants filed a motion to set aside our order sustaining the motion to dismiss the appeal on April 13, 1925, accompanying such motion with proof that the stenographer was unable to get out and deliver to appellants' counsel a transcript of the evidence in the case, until March 14, 1925. The cause was set for hearing at the April term, 1925, and set on the 17th day of April, 1925. Comparing the dates, it will be observed that the appellants had (after getting the transcript of the evidence) only three days in which to prepare, have signed and filed a bill of exceptions, and to print and serve an abstract of record and brief in the case. Upon this showing the court set aside its order sustaining the motion of April 4, 1925, and continued the case to the October term.

Affidavits of plaintiffs' counsel (on file) show that appellants served them with copy of abstract and brief on March 24, 1925. From this it appears that our order made in the submission of the case in October was an oversight. The whole matter had been previously disposed of by the court, and abstract and brief had been served months before the actual hearing.

Our order taking the motion to dismiss appeal, being a mere inadvertence, should be set aside, and it is so ordered. This motion had no standing at the time of submission, and must be disregarded. This brings us to the merits of the case.

II. Proceeding now to the deed from James M. Donaldson and wife to Robert T. Donaldson, the plaintiffs contend that such deed conveyed to Robert T. Don-

**First Deed.** aldson a life estate, with a vested remainder in the children of Robert T. Donaldson at the delivery of the deed, with possession only postponed until the death of Robert T. Donaldson. If the deed created a life estate in Robert T. Donaldson only, then there was a remainder to be disposed of in some manner.

It is not seriously contended by learned counsel for the defendants (appellants) that the deed is sufficient to create a spendthrift trust, but they contend that it does not create a vested remainder in the children of Robert T. Donaldson, but only created a contingent remainder, the owners of which would be determined upon the death of Robert T. Donaldson, who was alive at the trial, and is alive now, as no suggestion of his death has been made in this court. The further contention is that the children had a mere expectancy, and that neither Enoch Donaldson, nor his wife, acquired any title by the mere conveyances from the other children to them. James M. Donaldson and his wife are dead, and Robert T. Donaldson has been long without a wife—both are dead. Such ·are the contentions of the parties as to the first deed, supra.

III. Under findings of the facts, the trial court, observed:

"The deed from the ancestor James M. Donaldson is involved in this action only to the extent that it is necessary to determine from it the interest and right thereby conveyed to the defendant Robert T. Donaldson. And **Contingent Remainder.** it may be said here that if there is any such thing as a "dead center" in the law as to vested and contingent remainders it was found and observed by the ancestor when he framed this deed. Two theories are advanced, one that a life estate was conveyed to the son, the other that a mere use or right of occupancy was thereby granted him; as to the right of the ultimate remaindermen, there is also a difference of opinion, as to whether the deed created a vested or contingent remainder. *No decision as to this is pertinent*

*here as the parties in interest are not before the court.* I incline to the opinion, however, that amid all the haze and uncertainty a contingent remainder was created. But whether vested or contingent, under the modern holdings in Missouri it is a vendible interest. Dunbar v. Simms, 222 S. W. 838; Schee v. Boone, 295 Mo. 212. It may be extinguished later, but the vendee even under a quitclaim stands as the holder of the title, subject to the happening of the contingency. So this leaves the case largely depending on the terms of the deed executed by the defendant to his children on October 2, 1889.''

In the judgment, however, the court decrees the fee in Lyda B. Donaldson, the wife of Enoch Donaldson, deceased, and in Lucile Donaldson, the daughter of Enoch, in the proportions of nine-tenths to Lyda, and one-tenth to Lucile, taking into consideration the *mesne* conveyances from the other four children of Robert T. Donaldson, and the election of the wife to take a child's part.

The trial court was right in holding that the remainders were alienable whether vested or contingent. It was so ruled in Schee v. Boone, 295 Mo. 212; McClure v. Baker, 216 S. W. l. c. 1019; White v. McPheeters, 75 Mo. 286; Godman v. Simmons, 113 Mo. l. c. 131. In the latter case this court said:

"In White v. McPheeters, 75 Mo. 286, this court seemed to entertain no doubt that, under our statute in regard to executions, which declares that the term real estate as therein used 'shall be construed to include all estate and interest in lands, tenements and hereditaments,' the sale of a remainder under execution, whether it be regarded as vested or contingent, was authorized. It would be remarkable indeed if it were the law that a citizen had something which by the law of the land he could not sell and transfer himself, but which the sheriff under execution could sell and transfer for him. This ancient common-law rule—that contingent remainders are inalienable, like the rule that choses in action are not assignable—does not obtain in this State; not because there has been a positive statute abolishing these

rules, but because they are out of harmony with its general affirmative statute upon these subjects, and long since have ceased—if they ever did exist—as rules governing the action of its citizens in the business relations of life.

"If then the contingent interests of the said three plaintiffs and of the said Beal Godman in the premises were the subject of grant by deed duly executed in accordance with the requirements of our laws, the effect of these conveyances was to transfer to the grantees such interests, with all their incidents, to hold in the same right and to the same extent as they were held by the grantors before being conveyed; the grantees were thereby put in their shoes. If the grantors died before the termination of the life estate, the grantees took nothing. If they survived their mother, the grantees took just what the grantors would have taken if the conveyances had not been made."

Thus it appears that even a contingent remainderman may convey, or the sheriff may sell, his contingent interest, but the purchaser stands in the remainderman's shoes and, the conveyed interest may be defeated by subsequent events. The pertinent language of BRACE, J., in the Godman case, supra, meets with our approval. The purchaser of a contingent remainder, or a mere contingency to take property, may be purchasing nothing, but that is his lookout, and not that of a court. The contingent remainderman has the right to convey and the purchaser the right to buy whatever interest the contingent remainderman may have when the contingency happens. Thus far the views of the trial court is correct. He dodges the issue of whether or not the first deed set out created a vested or contingent remainder, and bottoms his ruling upon the second deed. He does, however, say that he is impressed with the idea that the first deed created only a contingent remainder. Of this in the next paragraph.

IV.  The troublesome paragraph of the first deed reads:

"To have and to hold the same unto the said second party for the sole and exclusive use and benefit of second party till his death. At the death of the second party the above described real estate shall vest in fee in his children and if he has no children alive then one-third of the real estate is to go to his widow and the rest returns back to his parents. The said real estate is not to- be liable in any manner for his debts or liabilities. The said real estate is not to be subject to be disposed of only on this express condition that the proceeds of sale of the said real estates shall be vested in other real estate for the same use and benefit as herein mentioned, otherwise said sale shall be null and void."

*Title of Grantee.*

Appellants contend that it creates a contingent remainder, and respondents hold that it creates a vested remainder. It is not questioned that in deeds, as well as in wills, the courts must seek the intention of the party from the whole instrument, and not from some particular portion of it. Our rulings have not been entirely harmonious, but the latest expressions of this court are found in Dickerson v. Dickerson, 211 Mo. 496; Buxton v. Kroeger, 219 Mo. 235, and Eckle v. Ryland, 256 Mo. 424. This last case approves of the ruling in the Buxton-Kroeger case, and this is concurred in by WOODSON, J., one of the dissenters in the Buxton case. In the Eckle case, LAMM, J., went into the doctrine of vested and contingent remainders fully, as did also WOODSON, J., in the Dickerson case. These cases and cases therein cited we think rule this case. We must give effect to the following sentences in said deed in determining the question as to whether or not the remainder was vested or merely contingent. We mean the following sentence: "*At the death* of the second party the above described real estate shall vest in his (Robert T. Donaldson's) children *and if he has no children alive* then one-third of the real estate is to go to his (Robert T. Donaldson's) widow and the rest returns back to his parents."

It must be concluded that this sentence not only indicates an uncertainty of the persons to take the

remainder, but it fixes the time when the uncertainty shall become certain, i. e. upon the death of the life tenant (Robert T. Donaldson )who is now living. There are not only alternate remaindermen, but the date is fixed when it shall be determined which of the two alternative remaindermen shall take. If there are no children of Robert T Donaldson living, then his widow takes one-third, and two-thirds reverts to the grantors, the parents of Robert T. Donaldson. At this time Robert T. Donaldson has no living widow, and four of his five children are living, but before his death all of his children may be dead, and he may leave a widow. The word "children" as in this connection used, clearly goes no further than the immediate issue of his body, and does not include grandchildren. Under the evidence when the grandfather made this deed, four of Robert T. Donaldson's children were of age, and great grandchildren might have been expected, if in fact some were not then in existence. It suffices, however, to say that this deed refers to the children of Robert T. Donaldson, and not to any later descendants. It is further clear that the intent of the maker of the deed was not to vest title on the date of the deed, but to vest title to the remainder upon the death of Robert T. Donaldson, in the persons then entitled to the title and the possession. Under a long line of decisions in this State, estates in fee *in futuro* may be created.

If a single child survived Robert T. Donaldson, both title in fee, and possession would vest in such child upon the death of the father, who was life tenant. If no child was then living one-third would go to Robert T. Donaldson's widow, if he left such, and the remaining two-thirds would revert to the grantors. If there are no children of Robert T. Donaldson at his death, and no widow left by him then, the Statute of Descents and Distributions would take care of this remainder in fee. Under the cases cited, supra, and they are well considered, the remainder created by the deed of James M. Donaldson and wife, was a contingent remainder. Just how this ruling effects this case remains to be seen. .

311 Mo. Sup.—15.

V. In the situation, and under the ruling in the preceding paragraph, Enoch Donaldson, having died before his father had nothing but a contingent interest to convey when he made a deed, through an intermediary to the wife. His death terminated his con-

**Deeds by Contingent Remaindermen.** tingent interest in the fee. Under the deed from James M. and wife, the contingent interest was left in the four surviving children. So far as his claimed one-fifth interest in the fee is concerned it becomes *nil* upon his death, and there was nothing for Lucile, his daughter, to inherit, and nothing for the widow (plaintiff Lyda Donaldson) to elect to take. Thus this question is disposed of so far as the one-fifth interest of Enoch is concerned.

The foregoing, however, by no means disposes of the matter, because on October 14, 1897, James S., William M., and Lillie A., three of the five contingent remaindermen, conveyed their contingent interests to Enoch Donaldson. Enoch then held four of the five contingent interests in the remainder. Enoch then on March 15, 1899, declaring himself single and unmarried, by quitclaim deed conveyed to Richard L. Durham. In November, 1899, Durham and wife by quitclaim deed conveyed to Lyda B. Donaldson. Enoch had evidently married between March and November, 1899. In September, 1903, Edward L. Donaldson and wife, Lillie A., conveyed the interest of Edward L. in this land to Lillie A. Donaldson. Note this deed was after the deeds from Enoch to Durham, and from Durham to Lyda B. Donaldson. On October 13, 1905, Lillie A. Griggs (*nee* Donaldson) and husband conveyed to Enoch. On October 2, 1897, Robert T. Donaldson, the life tenant, as we shall now call him, made a quitclaim deed to his five children, and the foregoing deeds to Enoch, being later in date, conveyed not only their contingent interest in the remainder, but also whatever in addition, if anything, was conveyed to them by this deed from the father. What that deed conveyed we discuss later.

The record further shows another quitclaim·deed from the brother William M. and wife to Enoch, of date October 13, 1905, as also another such deed, Lillie A. Griggs (*nee* Donaldson) and husband to Enoch of date October 13, 1905. Why these deeds were made in view of the deed of October 14, 1897, described, supra, does not appear.

It seems that T. A. Gordon procured a judgment in the court of a justice of the peace, against Robert T. Donaldson in November, 1895. The judgment seems to have been transcripted to the circuit court, an execution was issued from the circuit court, and the land in question sold to T. A. Gordon, who being joined with his wife (and after receiving a sheriff's deed for the interest of Robert T. Donaldson) on November 3, 1899, deeded (by quitclaim deed) the same to Lyda B. Donaldson, one of the plaintiffs herein. The interest of the five children of Robert T. Donaldson, being purely a contingent remainder, as heretofore stated, the whole fee in remainder would go to those living when the father died. A part of this very contingency was that if there was a sole survivor of the five, this sole survivor would get the whole remainder. Another contingency was that the contingent interest of the survivors increased in proportion to the number dying before the father. All this was, however, a part and parcel of the contingent remainder vested in each at the making of the deed. If any are living at the death of Robert T. Donaldson, these deeds by the others to Enoch, would carry their interest. Even when Enoch died, the result was only to increase the contingent interest of the other four to one-fourth instead of one-fifth, but their deeds would carry this or any other greater interest (if there were other deaths) to Enoch or his grantees. This because, each of the five contingent interests had the further contingency of being increased in quantity by the death of one or more of these contingent remaindermen. So when one deeded his contingent interest, his deed would cover just what that contingent interest would be (if any) when the life estate fell in on

the death of Robert T., the father. In other words their deed carried to Enoch the whole bundle of contingencies. Enoch's estate would be entitled to just what either or all of the remaining four children might have at the death of the father.

VI. This brings us to the discussion of the deed of Robert T. Donaldson and wife to his five children, all then living. The date of the deed is October 2, 1897. The acknowledgment was on the same date, and it was filed for record on the 4th of October, 1897, at 11:20 A. M. of that day. As will have been noticed the recited consideration is "natural love and affection" and seventy dollars. Such at least is the recited consideration. The granting clause is: "have this day remised, release and forever quitclaim and to by these *presence* justly and absolutely remise, release and forever quitclaim unto the parties of the second part, their heirs and *assigns* forever, all such right and title as we the parties of the first have or *ought to have* in the following described real estate."

*Conveyance by Life Tenant.*

The real estate described is the land in this suit and other lands. The *habendum* clause, we have heretofore set out, supra, in the deed, supra, but it being a little out of the ordinary we set it out here for ready reference in this discussion. It reads:

"To have and to hold the premises aforesaid unto them the said parties of the Second Part, their heirs and assigns, to the only use and behalf the said parties of the second part their heirs, and assigns forever, so that neither the parties of the first part or any other person or persons for or in our names and behalf, shall or will hereafter claim or demand any right or title to the premises aforesaid, any part thereof, *the aforesaid real estate is to remain undivided until sold or the death of first party each member of the second part is to share equal in the aforesaid real estate, shall be subject to the support of the first party until their death or until it is sold.*"

In the very first point made by learned counsel for appellants, it is said that the deed of James M. Donaldson "created a life estate in said lands in Robert T. Donaldson, the son, and by express terms postponed the vesting of the fee until, 'at the death of the second party,' Robert T. Donaldson." Respondents say that Robert T. took a life estate, but urge that the vesting of the fee was not postponed. They urge, as we have said, that it created a vested remainder, rather than a contingent one. Upon this point we have, supra, ruled against respondents, and have agreed to the views quoted, supra, from appellant's brief. The deed of James M. Donaldson lacks the elements of a spend-thrift trust. [Kessner v. Phillips, 189 Mo. 524.] There may have been an attempt to create such a trust, but if so, it failed. [Kessner v. Phillips, supra.] So, in construing the deed of Robert T. Donaldson and wife to his children, we must proceed upon the theory that he had a simple life estate in said land, although there is some surplusage in the deed to him.

Reverting now to the Robert T. Donaldson deed, and answering our own question, supra, we are forced to the conclusion that such deed conveyed the life estate to his five children, and that Enoch's death did not destroy the rights acquired under that deed. Under the deed of James M., the son Robert T. had a life estate, and was entitled not only to the possession, but also to all the rents and profits thereof. These rights, both as to possession and the rents and profits, passed to the five children named, and their rights continue thereto until the death of Robert T., the grantor and father. In these, both the widow and the child of Enoch would have an interest, unless cut out by other matters to be discussed later. This right of possession and rents and profit were conveyed to Enoch by the other four children, because all of their deeds are of later date than that of Robert T. to them. So at this point it can be safely said, that at Enoch's death either he or his wife owned and possessed this right of

possession, and the right to rents and profits, unless there is saving grace in the last few words of the deed, "shall be subject to the support of the first party until their death, or until it is sold."

These words do not cover a life estate. The life estate covers the possession and all the rents and profits. The mere support of the grantor has nothing to do with possession. The grantees in the Robert T. Donaldson deed could have taken possession of the land, and taken all of the rents and profits, and out of the rents and profits the grantees could comply with this clause of the deed, if it is valid, without yielding their possession. They might support him on the farm, or elsewhere. This clause is not necessarily so conflicting with the express grant in the first part of the deed, as to make it void, as ruled by the trial court. If the clause is effective, and we think it is, the meaning of it is that the grantees in accepting the deed agreed to support the grantor until his death or until the land was sold. Just why the last clause was put in we do not know. It may have been an idea gathered from the J. M. Donaldson deed. But this is not an action to cancel the deed for failure to comply with any agreements therein contained. The case was not tried upon that theory.

We think the trial court was in error in finding that by the deeds to defendant, Robert T. Donaldson's children necessarily conveyed his reserved right for a support called for in the last clause of the deed. The deed from James M. to Robert T. as we rule, supra, conveyed a life estate, which carried with it the right of possession and all the rents and profits, and when Robert T. conveyed to his children he not only conveyed this 140-acre tract, but other lands. As to this tract his deed conveyed his life estate, but there was a reservation in the deed for his support. Those accepting the deed, were obligated to support him. This includes the other lands as well as this tract of 140 acres. This reservation of a support (made an agreement to support by the acceptance of the deed) is not necessarily an

interest in the land, or a lien thereon. At most it could only be a ground for setting aside the deed, if there was a failure to support. The sheriff's deed to Gordon and Gordon's deed to plaintiff Lyda, even if valid, would convey only the life estate of Robert T. and not a fee interest in either Lyda M. or Lucile, as the judgment reads. There was no evidence in the record showing a fee estate in either plaintiff Lyda M. or plaintiff, Lucile, either as against defendants, or any other person. Neither could have a fee interest until Robert T. dies.

Nor is there any evidence showing either defendant to have any interest whatever in the land. Robert T. may have a suit to cancel the deed he made on the ground that the grantees therein have not kept the terms of the agreement therein, or may have only a simple action for the reasonable value of his support from year to year. Neither of these matters were threshed out in this case, and we are not deciding them. The most that either plaintiff is entitled to, at this time, is the possession for the remainder of Robert T. Donaldson's life. He was eighty-one years old ond unmarried at the date of the trial. It is claimed that Lyda M. got this life estate, without the agreement to support, by reason of the sheriff's deed to Gordon. Defendants urge this to be invalid. But this we leave for the next paragraph.

VII. The first contention is that the sheriff's deed is insufficient to show title without showing the judgment and execution upon which it is based. No judgment or execution was offered by either party. A copy of the deed does not appear in evidence. but appellant abstracts it, thus:

**Sheriff's Deed.**

"Sheriff's deed under transcript execution, executed by Abram Kemper, Sheriff of Shelby County, Missouri, to T. A. Gorden, dated April 6, 1899, acknowledged April 6, 1899, before Nat M. Shelton, Judge of the Circuit Court of Shelby County, Missouri,

attest E. M. Damrell, clerk, filed April 10, 1899, recorded in Shelby County, Missouri, Book 50, page 208, recited consideration $120. Said deed recites that T. A. Gorden on November 13, 1895, recovered judgment against Robert T. Donaldson for $241.51 debt and $5.20 costs before J. H. Maupin, Esq., justice of the peace for Jefferson Township, Shelby County, Missouri; that a transcript thereof was filed in the office of the Clerk of the Circuit Court of Shelby county, Missouri, June 13, 1896; that a transcript execution issued thereon November 11, 1898, directed to J. W. Thompson, sheriff; that said sheriff did on November 12, 1898, levy on the above-described land; that a public sale was had at the front door of the court house in Shelbyville, Shelby County, Missouri, on April 6, 1899, during the session of the regular April term, 1899, of the Circuit Court of Shelby County, Missouri, after due advertisement and the land purchased by T. A. Gorden for the sum of $120, he being the highest bidder therefor.''

The foregoing recitations in a sheriff's deed are prima-facie evidence of the facts stated. They have been made such by statute. [Sachse v. Clingingsmith, 97 Mo. l. c. 411 and 412; Perkins v. Quigley, 62 Mo. 502; Carpenter v. King, 42 Mo. l. c. 224.]

There is no recitation of the issuance of an execution to the constable, and of a *nulla bona* return by him, but in the Perkins case, supra, at page 502, it is said: ''Upon general principles, it would seem, that, as the clerk had no power to issue an execution until after one was issued by the justice and returned *nulla bona,* but was expressly prohibited from so doing, the issuance of such execution from the clerk's office raised the presumption, usually indulged in regard to public officers, that he did his duty and obeyed the statute, until the contrary appeared.'' .

In the King case, supra, 42 Mo. l. c. 224, it is said: ''Now, the deed does not recite the name of the justice of the peace before whom the judgment was rendered, but it does recite the date of the rendition, the amount

for which it was rendered, the names of the parties to the record, the time of filing the transcript, and when execution was issued. This, we are inclined to think, is sufficiently definite to render it prima-facie evidence and shift the burden of proof on the adverse party, if he denies its validity.''

So too in the Perkins case there was no recitation in the deed as to an execution and *nulla bona* return by the constable, yet the court said as we have quoted, supra.

In the Sachse case, supra, 97 Mo. l. c. 412, the court said: ''The sheriff's deed recited, among other things, the issue of execution from the circuit court upon the transcript of that judgment. The recitals in that deed are prima-facie evidence, under our law, of the facts required to be stated therein. [R. S. 1889, sec. 2392.] In the absence of any showing to the contrary it will be presumed that the execution was properly issued from the circuit court. If facts exist, outside the record, which make its issue illegal, any party injured by proceedings under it might have such proceedings vacated by taking appropriate and seasonable steps directly attacking it. But the validity of proceedings under such an execution cannot be assailed collaterally, for reasons outside the record, no want of jurisdiction appearing, or other cause invalidating the judgment. This was the view taken of the present law by this court in a recent opinion (Perkins v. Quigley, 62 Mo. 498), and we adhere to it.''

The King case, supra, at page 223, discusses the character of these transcript judgments, and practically places them upon the plane of a circuit court judgment. So it must be ruled that the introduction of the sheriff's deed, with the recitations quoted, supra, was prima-facie evidence of the transfer of the title from Robert T. Donaldson to Gordon, and Gordon later transferred to Lyda M. Donaldson. This judgment became a lien from the date of its filing, June 13, 1896, and this lien was prior to the deed from Donaldson to his children, which deed was in October, 1897. The burden was cast upon defendant to show that the execution was issued before an exe-

cution had been issued by the justice, and a *nulla bona* return made by the constable, and to further show that Robert T. was a resident of the county at the time. No attempt was made by defendant to make such showing in so far as the justice's execution and constable's return is concerned. There was no error in admitting this sheriff's deed and Gordon's deed to plaintiff Lyda M., so far as this objection goes.

Another objection is that the land was a homestead, and Robert T. Donaldson's homestead was not set off to him before the execution sale April 6, 1899. If this was ever a homestead and it might have been, but in October, 1897, R. T. Donaldson conveyed all his rights, whatever they were to his children, under our rulings, supra. He had no homestead to be set off.

The foregoing covers all the objections to these two deeds, i. e. the sheriff's deed to Gordon and Gordon's deed to Lyda M.

But with all this neither Lyda M. Donaldson, nor her daughter, Lucile, have as yet a fee-simple title, as decreed by the court. The judgment should declare the interests of the parties.

The judgment should be reversed and the cause remanded so that it may be reheard in view of our rulings herein. By this we do not cut off amendments of pleadings by either party.

It is ordered that the judgment be reversed and the cause remanded. All concur.